Our final case this morning is No. 2421-57, Torres v. DHS. Okay, Mr. O'Donnell. Good morning, Your Honors, and may it please the Court. My name is Keith O'Donnell, and I represent Petitioner Christian Torres on this appeal. This appeal raises two main issues. The first is whether the MSPB abused its discretion in relying upon the agency's purported jilio impairment concerns without first doing an individualized assessment of whether or not Mr. Torres was in fact jilio-impaired and whether and to what extent that jilio impairment may have an impact on his day-to-day job duties. The second issue is whether the MSPB abused its discretion sustaining the penalty of removal where that penalty was unreasonably harsher than the penalties imposed upon agency law enforcement employees charged with the same or similar offenses. As to the first issue, Your Honor, it's important to first consider the significance of jilio impairment issues as they relate to the assessment of the reasonableness of an agency's penalty determination. The 12 factors set forth in Douglas are non-exhaustive. In fact, this Court in Purifoy v. V.A. held or recognized that the factors set forth in Douglas are non-exhaustive risk considerations that the Board must assess when relevant to determine whether a penalty was reasonable. In recognizing that this Douglas factor list is non-exhaustive, this Court necessarily recognized that in particular cases there may be other factors, although not enumerated in Douglas, that are nevertheless relevant and significant to the assessment of the reasonableness of an agency's penalty determination. I submit to Your Honors that in a case like this involving a law enforcement officer where there are or there is a sustained charge of lack of candor, jilio impairment concerns is one such factor. That's why in this Court, in Torres v. DHS, in that case it was Crispin-Torres. So we say we agree with you that jilio impairment is an appropriate thing to consider under Douglas. So what is your argument for why what happened here, what the Board did here, considering the jilio impairment, why wasn't it enough? Why wasn't it enough to say? Because, you know, there has to be some review of the agency's determination. The agency was concerned that there could be jilio impairment, and it was one of many factors that was considered. So why isn't that good enough, given the position, the nature of the Mr. Torres' position? Your Honor, a very similar issue came up in the Torres v. DHS opinion that this Court rendered in 2023. In that case, again, you had a law enforcement officer that has a sustained charge of lack of candor. But what the MSPB failed to do and what this Court said MSPB should have done is determine specifically, okay, just because you are or potentially may be jilio impaired doesn't mean that that's actually going to affect your day-to-day job activities. What's significant here is that there's testimony in the record. In fact, the only testimony in the record that goes to the what, if any, impact a jilio impairment may have comes from the Petitioner himself, who testified that in his 12 years as a in the agency. He never once testified as part of his regular job duties, never once. And it's the  So that's not the issue. Where does the A.J. discuss the jilio impairment on that page? I'm sorry. Where does the A.J. discuss the jilio impairment? Right. One second, Your Honor. Is that Appendix Page 24? I believe so, Your Honor. It is. So the A.J. Appendix Page 24, the A.J. credits the testimony of B.H. Seidman. What did Sabatino say about that? That's correct. What did he say about it? Sabatino said What page? It's still on 24th. No, no, no. The actual testimony. Your Honor, I don't have that testimony in front of me. I'd be happy to submit a letter explaining the nature of the testimony. Okay. That's all right. Go ahead. Okay. So, again, as this Court's decision in Torres provides, where there is a failure of the MSPB to conduct that analysis of the nature of the jilio impairment and the impact it may have, remand for a more thorough review of that issue is warranted. With respect to the second issue, there were certain comparators that I think you relied on. In any of those comparator situations, had the person who engaged in the misconduct been previously warned? Had they engaged in similar misconduct in the past and been warned that if they engaged in similar misconduct, they would be removed? The answer to that question is no, Your Honor, although I would note for the record that although Christian Torres in this case did have that prior misconduct, as even as the deciding official put in her decision letter, that was only for, it was only considered with respect to his knowledge. It wasn't considered with respect to progressive discipline, but point understood, Your Honor. No, there was not. As to the second issue, the Petitioner offered into evidence at the hearing before the MSPB comparator discipline cases in which the agency imposed a penalty short of removal against similarly situated employees charged with offenses that were the same or similar to the charges imposed against Petitioner. And the board's failure to address this issue as well. Well, counsel, where in the record did Mr. Torres first raise a disparate treatment claim before the board? Do you have a quotation? Sure, Your Honor. So, Your Honor, the first instance in which the concept of disparate penalties was raised, although not explicitly, was, one, when Petitioner offered at the hearing comparator discipline cases as exhibits. Two, Petitioner cross-examined the deciding official in this case with respect to several of those comparator discipline cases. Is there anything in the appendix on that? Sure. So with respect to the offer of comparator cases, I could give you that. That would be Appendix 0374 through 0389. Petitioner cross-examined the deciding official about some of those cases, not all of those cases, but some of those cases at 0518 to 0521. Petitioner also argued in his post-hearing written closing arguments that the agency had failed to consider any comparator cases and, therefore, to properly consider the Douglas factors in determining an appropriate penalty, notwithstanding the fact that the deciding official in Petitioner's case was the same deciding official in some of the other comparators. So, again, although the dispropenity argument wasn't expressly raised, certainly the concept that the deciding official should have looked at these comparator cases was. Indeed, in the agency's own written closing arguments ---- What's your best argument that there was a comparator like your client? I apologize, Your Honor. What's your best instance where there's a supposed comparator like your client? Your Honor, so one of the four comparator cases offered, it's referred to as Comparator 2 in Petitioner's briefing, is a CBP officer in the same field office in the same chain of command as Petitioner was charged with misuse of position and lack of candor stemming from an incident in which that officer, while off-duty, went to the airport at which she worked in uniform for the purpose of escorting her partner through airport security. Different facts, right? Your Honor, the facts are different, but this Court has advised that whenever you're facing a dispropenity analysis, inherently the facts are going to be different. It's going to be a fact-intensive analysis. For example, the facts of the comparator discipline cases in the Crispin-Torres case from 2023 were also not identical to the facts of that case. In that case ---- Identical and similar in different questions. The example you give is not even similar. Your Honor, I think when distilled ---- Here, the gravamen, I think, of the four charges against Petitioner can be distilled as involving, one, some degree of dishonesty or deception, and, two, misuse of a position for his own personal benefit. With respect to Comparator 2, I think that you have the same underlying factors. And I say that because of ---- Can I ask you a question? Like, could the agency and the MSPB view these comparators as having a different level of seriousness in terms of the conduct? I mean, it seems to me that there is a different level of seriousness. Your Honor, so the answer is, yes, they could. But respectfully, I believe that the disparate penalty analysis starts with, one, is the disparate or is the comparator case being proffered sufficiently similar that it warrants consideration? And once you've established that it warrants consideration, then the burden shifts to the agency to give a legitimate reason why that case, the penalty in that case in this case should be different than the penalty in the comparator case. That analysis has not happened yet, which is one of the reasons, or which is the primary reason we believe a remand is warranted for further consideration by the Board. But it sounds like implicit in what you just stated is you agree that if the alleged comparators are not sufficiently similar, then no such analysis is required. That's correct, Your Honor. This Board's case law requires that there be sufficient similarity between the proffered comparator and the instant case. What I was getting to before with respect to Judge Dyke's question is that the comparator two that I was just explaining, I believe, is sufficiently similar. Again, although at the hearing before the MSPB, the deciding official in this case, Sabatino, testified that she didn't sustain the lack of candor charge in that comparator case where she was also the deciding official. I would submit to you that if you look at the underlying conduct there, it still displays elements of dishonesty and deceit. And I say that because you have a law enforcement officer who's off-duty, going to the airport, dressed in uniform, which is clearly being done to make her colleagues and fellow law enforcement officers at the airport believe she's on duty and there to work, when her purpose is for her own personal benefit of getting her partner through airport security. And it's that level of deceit and dishonesty, again, coupled with the misuse of her position that I think makes it similar, sufficiently similar to Mr. Torres's case here. Okay. You want to stay with the rest of your time for a while? Yes, Your Honor. Okay. Mr. Hayden. Where do we find the Sabatino testimony about Giulio? Yes, Your Honor. That's at Appendix 511, transcript page 70. Mr. Sabatino testifies there at the transcript, page 70, that he could, this could impact his ability to testify. Not that it would, but that it could impact his ability to testify. And that's the same language in the opinion, could, right? Yes. And in the decision letter, as Judge Stoll is mentioning, the deciding official said that this conduct could be disclosed under Giglio, but even if not, Mr. Torres still had a lack of integrity that was significant in her decision. Your Honors, I think it should be outlined here before we go any further that Mr. Torres was in a position of authority over individuals seeking entry into our nation. He abused this position. He minimizes this conduct and briefing as flirting and misstatements. Can I ask you something? Yes, Your Honor. I'm sorry to interrupt you, but with respect to Giglio and some of the other issues in the case, is it also impactful or relevant that this was, this conduct here was brought to the attention of the Miami Police Department? Yes, Your Honor. One of the considerations is the impact that it has on the agency's reputation, and that is one of the Douglas factors that it's considered. So, yes, it was important to the deciding official that he, this was a matter handled by the Miami Police Department, there was a police report filed, and that that could negatively impact DHS's reputation, particularly because officers such as Mr. Torres are trusted to use their integrity to handle and make decisions, and this impacts his reputation. Counsel, why do you contend that the Board did not need to address the alleged comparator cases identified by opposing counsel? Your Honor, for a few reasons. The first is that the only time that those three, I believe, comparators that were in cross-examination, and by the way, that's Appendix 519 through 21, transcript pages 104 through 109, Your Honors. Mrs. Sabatino is merely cross-examined about those comparators. Conducting cross-examination about comparators is not the same as developing that argument for appeal. For example, Mr. Torres submitted a written closing argument in this case, and in that closing argument, there's no mention of disparate treatment. The only allegation by Mr. Torres is that the administrative judge simply failed to consider Douglas Factor VI. There's no mention that the individual comparators that were cross-examined about showed disparate treatment. Your Honor, my second point on that would be that a citing official did not need to review these comparators, even if they were properly brought up by Mr. Torres, because none of them are sufficiently similar. The one brought up here in oral argument, this, it's actually the fourth one listed in the evidence. There are seven comparators listed in the evidence. This is actually the fourth one numerically listed. It should be mentioned, and I don't think we actually mentioned it in our briefing, but there's giglio impairment mentioned in the proposal letter of that case, but then in the actual decision letter, which was just a letter of reprimand, giglio impairment is not mentioned by the deciding official. So, the deciding official in that case considered mitigating circumstances, and it was less than from removal to a letter of reprimand. And in the letter of reprimand- And the potential giglio impairment here is more significant, maybe, because, at least I remember reading in somebody's opinion, I think it was the administrative judges that, because of the, or maybe it was the agency official's opinion, because of the more notoriety with the reporting to the Miami Police Department, this becomes a more bigger concern than going outside the agency, right? Yes, Your Honor. And the facts also demonstrate that Mr. Torres was in a rover position at the airport that day. So, using our general knowledge of customs at the airport, this was not a position where he was merely stamping passports. This is a position where he was expected to use his discretion to rove about this area of the airport and make decisions about who to take into secondary. And, Your Honor, I think my third point on this is that, simply, as Petitioner points out, the Douglas Factor list is not exhaustive, and all do not need to be mentioned in every case. So, even if the administrative judge expressly failed to consider the comparators under Douglas Factor VI, that still would not warrant this case returning to the board. Counsel, in opposing counsel's briefing, a lot of focus is on the Torres case. Yes, Your Honor. Do you want to respond to that or distinguish it? Yes, Your Honor. So, in this Court's 2023 Torres case, the Petitioner Crispin Torres, the Court found that if GIGLIO impairment weighs against a particular Douglas Factor, there must still be substantial evidence to support that conclusion. Here, in this case, GIGLIO impairment was not considered by the deciding official under any particular Douglas Factor. So, in this Court's previous case, it was Douglas Factor VI and X. And in that previous case, the arbitrator before the board rejects comparator evidence because those don't include a GIGLIO impairment, which the arbitrator in that case said was a significant factor. I believe he actually said it was a critical factor weighing against the Petitioner. So, here we don't have anything like that. We don't have the administrative judge concluding that the GIGLIO impairment significantly weighed against a particular factor. Instead, we see a very fulsome review, which is what this Court asked for, a fulsome review of all the factors. And here we believe there's significant evidence under each of those factors, as outlined both by the agency and by the board. Your Honors, if there are no further questions, we respectfully ask that the judgment of the board be affirmed. Okay. Thank you. Mr. O'Donnell. Your Honor, just to briefly address a few of the points raised. One opposing counsel mentioned that not all Douglas factors have to be addressed by the MSPB in its review, and that's true. But what this Court says in Malloy and what this Court says in Torres is that the MSPB nevertheless has to address any significant factor relevant to the penalty determination. Moreover, as Judge Stolt was asking about the notoriety of the offense as a result of the police being called, I would like to call your attention, Your Honor's attention to the second comparator that I think is relevant here, which is referred to as comparator three in Petitioner's briefing below. It's on Appendix 380 to 387. In comparator three, a Customs and Border Protection officer was arrested and pled guilty to driving while under the influence. He was charged with conduct non-becoming an officer, misuse of position for having identified himself as a federal law enforcement officer for no official purpose, and failure to timely report his arrest. Agency proposed 45-day suspension, ultimately mitigating it to 21. Significantly, the officer there failed to report his arrest for nearly a month and a half, notwithstanding the fact he was obligated by agency policy to report within 24 hours. As with the other comparator case that I described before, I think there's also no question that if you look at the underlying facts there, there's also elements of dishonesty and deceit that make it similar to the case here, in that when you have a federal law enforcement officer obligated to report his arrest, his reason for not doing it is he had an opportunity, Your Honor.  Thank you. If there are any questions on the case that's submitted, that concludes our session for this morning.